562 So.2d 395 (1990)
Javier P. CALLEJA, Appellant,
v.
STATE of Florida, Appellee.
No. 89-1719.
District Court of Appeal of Florida, Fifth District.
May 31, 1990.
*396 James B. Gibson, Public Defender, and Brynn Newton, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and James N. Charles, Asst. Atty. Gen., Daytona Beach, for appellee.
COBB, Judge.
This case appeared before this court last year, see Calleja v. State, 541 So.2d 1340 (Fla. 5th DCA 1989). Therein, this court held that points assessed for victim injury were improperly added to the scoresheet and remanded this case to the trial court for resentencing. The trial court then imposed the same sentence, which Calleja now says is a departure sentence without written reasons supporting it.
The plea entered by the defendant, Javier P. Calleja, on February 2, 1987, shows that the defendant pleaded no contest to Counts I and II (attempted sexual battery) and also pled no contest to Counts III and IV (lewd assault upon a child). The plea states, in paragraph 5, that the prosecutor recommended:
17 years D.O.C. followed by 15 years probation, no contact with any child under the age of 16 (unsupervised contact); recommended M.D.S.O. program if defendant qualifies. State and defense stipulate to the attached scoresheet.
However, in paragraph 8 of this plea agreement, the following appears:
8. I understand my sentence will be imposed under the sentencing guidelines. A presumptive sentence will be determined based upon certain factors. The court can exceed this presumptive sentence and impose the maximum of 90 years by stating clear and convincing reasons. If the sentencing guideline range is exceeded I will have the right to appeal my sentence.

The Florida Supreme Court held in Roberts v. State, 547 So.2d 129 (Fla. 1989), that a trial court can impose a departure sentence in excess of a new guideline range on remand for resentencing under a corrected scoresheet, when the original sentence was predicated upon an improperly calculated scoresheet, if the trial court properly finds departure appropriate. That finding, however, must be substantiated by valid written reasons. See Fla.R.Crim.P. 3.701(d)(11); State v. Jackson, 478 So.2d 1054 (Fla. 1985). The supreme court held, in Smith v. State, 530 So.2d 304 (Fla. 1988), that a plea bargain itself may serve as a clear and convincing reason for departure when the departure reason was accepted as an integral part of the bargain itself (Emphasis added). See also Quarterman v. State, 527 So.2d 1380 (Fla. 1988); Holland v. State, 508 So.2d 5 (Fla. 1987). The trial court's reliance on the plea bargain entered into by the defendant on February 2, 1987, cannot serve this purpose. That bargain was not accepted by the defendant as a departure sentence at all. He explicitly understood that his sentence would be imposed under the sentencing guidelines.
Based upon the foregoing case law of the Florida Supreme Court; we agree *397 that the defendant must be allowed to withdraw his plea, at his option, if he elects not to accept the original sentence which was based on the incorrect scoresheet.[1] If he now agrees to that sentence as a departure sentence, that reason for departure should be stated in writing by the trial judge. Otherwise, the state is at liberty to proceed against the defendant on all original charges filed against him. See Jolly v. State, 392 So.2d 54 (Fla. 5th DCA 1981).
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
COWART, J., concurs.
DAUKSCH, J., concurs specially with opinion.
DAUKSCH, Judge, concurring specially.
I agree with the majority opinion. I write to express my puzzlement at the use of the word "bozo." I do not know the etymology of the term and am not so interested as to seek it out. I do confess, however, to having been never able to see the forest when I am in the thick of it and surrounded by so many trees. As to whether that is good or bad I also do not know. I hope its good because I certainly do not want to be called something bad by a circuit judge. I was, once, when another ninth circuit judge referred to us as "those dwarfs on the Halifax" (meaning the river our offices face). We are amused, as the majority says, but I'd be more amused if the comments were at least a little more inventive. I can assure all that our reciprocal comments are also humorous, sometimes knee-slappers, we just don't put them on paper for all to read.
NOTES
[1] We note, with some amusement, that this conclusion was forecast by the trial judge, who predicted that "some bozo on the appellate court ... incapable of seeing the forest for the trees" would buy the defendant's argument. This result easily could have been avoided by the trial court had it simply adhered to the sentencing requirements set forth in Smith and Jackson.